Richard Earl VON HOLT, Jr. *v.* STATE of Arkansas

CA CR 03-15                                          151 S.W.3d 1

Court of Appeals of Arkansas
Division III
Opinion delivered March 3, 2004

*Julia L. Llewellyn*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant, Richard Earl Von Holt, Jr., was convicted of possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and possession of marijuana by a jury in Sebastian County Circuit Court. He was sentenced to a total of forty years' imprisonment in the Arkansas Department of Correction. He has three arguments on appeal. First, he argues that there was insufficient evidence to find him guilty of possession of methamphetamine with intent to deliver. Second, he argues that the trial judge erred in issuing a nighttime, no-knock search warrant. Third, he argues that the trial court erred in allowing the testimony of two Oklahoma police officers. We agree with appellant's third point on appeal and reverse and remand for a new trial.

On June 13, 2000, a search warrant was executed on appellant's residence. The warrant was based on information provided by a confidential informant who obtained methamphetamine from appellant's residence. Officer Smith witnessed the informant go into appellant's residence and purchase methamphetamine. While the informant was inside, he saw additional items of drug paraphernalia. The informant also spoke with Brenda Edwards, appellant's girlfriend, who lived in the apartment. She informed the informant that more methamphetamine would be available during the nighttime hours for sale. The informant also learned that appellant and Ms. Edwards could see any approaching visitors through a window that gave them a view of the stairs. The informant stated that both appellant and Ms. Edwards had explained that if law enforcement were ever seen outside, they would attempt to destroy any evidence of methamphetamine. There were actually two staircases leading up to the apartment, both of which were in view from the window inside the apartment.

Both appellant and Ms. Edwards were inside the apartment at the time the warrant was executed. Officer Donnie Wear of the Fort Smith Police Department testified that he was the custodian of the evidence on that occasion and he kept track of the items seized. He stated that the officers found a black zipper bag containing numerous items during the search of the bedroom. The black zipper bag contained a plastic bag containing an off-white powder substance, another smaller plastic bag containing an off-white powder substance, and a clear plastic bag containing a yellowish powder substance. Also in the black zipper bag was a plastic bag with residue, a piece of the bag having been cut and sealed off; a plastic bag containing coffee filters with a yellowish

tint stain to them; and a plastic bag containing a "green vegetable substance, like a couple pieces, rolling papers inside." Officer Wear also testified that the black zipper bag contained four metal spoons, all of which had a white colored, burned residue on them, a loose one-cc syringe, and a bag of one-cc syringes. A crock-pot lid containing a white and an off-white powder residue on the surface were found on a shelf in the bedroom. Another one-cc syringe was found in the bedroom along with some white pills that were found on the nightstand. Special Agent Keeter also found four spoons with a white powdery residue on the surface and burn markings on the bottom in the closet in the bedroom. In the kitchen, the officers found a glass tube that had been converted into a smoking device, and a rent receipt with appellant's name on it for $370 cash. Moreover, there was a bag beside the bed with $1,073, and a purse in the kitchen with ninety dollars in cash inside.

Following the discovery of the items, appellant was arrested, taken into custody, and interviewed. Officer Wear conducted the interview of appellant, and Special Agent Keeter was present as well. Appellant was advised of his Miranda rights before he was questioned. He completed the form and signed it. During the appellant's interview, he revealed that the items in the apartment belonged to him, including the methamphetamine, marijuana, and paraphernalia, and claimed responsibility for everything that was found during the search. He denied, however, that he was involved in the manufacture of methamphetamine and stated that the methamphetamine was for his own personal use. He stated that he was unemployed and that the money from the apartment was from his gambling earnings.

Brenda Edwards, who pled guilty after the items were found in the apartment she shared with appellant, testified at trial that she had witnessed appellant selling methamphetamine to others. She also testified that while she and appellant lived together she saw appellant cooking methamphetamine. Also at trial, Detective Paul Smith, a narcotics detective with the Fort Smith Police Department, testified that multiple plastic bags containing varying amounts of a controlled substance is indicative of trafficking or distributing in that it indicated the different street values being placed on a particular drug. The plastic bags found in appellant's apartment were different sizes. The larger bags were used for larger amounts of methamphetamine, and the smaller bags were used for smaller quantities such as eight-ball quantities, which is an eighth

of an ounce. Moreover, the purity level of the methamphetamine found was also indicative of distribution. Once methamphetamine has been converted from the raw materials into the methamphetamine, it is generally anywhere from seventy to ninety-nine percent pure, and the typical methamphetamine purchased on the street has a purity of anywhere between thirteen to twenty-three percent. Typically, when the crime lab report comes back with a substance that tested over seventy percent pure, that indicates that it has come from a clandestine lab. Once it is cooked, it is then cut by either B-12 or Nicotinamide, turning it into three, four, or six ounces of methamphetamine and thereby increasing profits. The bag found that had been heat-sealed on the corner is also indicative of distributing. This is done when one bag contains more than one sale of methamphetamine. When the dealer wants to distribute the contents of the bag, they will put the proper amount in the corner of the bag, cut the corner, and reseal it with heat.

At the close of the State's case, defense counsel moved for a directed verdict stating that there was no direct evidence introduced that appellant possessed methamphetamine with the intent to deliver. The trial court denied the motion, which was renewed at the close of all the evidence. At the conclusion of the hearing, the jury convicted appellant of possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and possession of marijuana. This appeal followed.

## I. Sufficiency of the Evidence

Appellant first argues that there was insufficient evidence to find him guilty of possession of methamphetamine with intent to deliver. It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Howard v. State*, 348 Ark. 471, 74 S.W.3d 600 (2002). Our supreme court has stated that when we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998) (citing *Freeman v. State*, 331 Ark. 130, 131-32, 959 S.W.2d 400 (1998)). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id.* Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Howard,*

*supra.* Such a determination is a question of fact for the fact-finder to determine. *Howard, supra.* Additionally, the longstanding rule in the use of circumstantial evidence is that the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused to be substantial, and whether it does is a question for the jury. *Howard, supra* (citing *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000)).

■ Arkansas Code Annotated section 5-64-401(a) (Supp. 2003) states that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." *Rabb v. State*, 72 Ark. App. 396, 39 S.W.3d 11 (2001). Appellant specifically urges that no evidence was presented by the State to indicate that appellant intended to sell the methamphetamine found in his possession. However, possession of more than two hundred milligrams of methamphetamine gives rise to a presumption of intent to deliver.[1] *See* Ark. Code Ann. § 5-64-401(d); *Rabb, supra.*

■ ■ In this case, numerous items found during the execution of the warrant indicated that appellant was indeed involved in the distribution of methamphetamine. There were several plastic bags, varying in type and size, and the substances found in the different plastic bags varied in quantity and purity. One of the plastic bags had been cut and resealed using heat, which is also indicative of distribution. Nicotinamide, a means by which methamphetamine is cut prior to sale, was also found. Moreover, a total of 1.272 grams of methamphetamine was discovered in appellant's apartment. Appellant admitted that the items found in the apartment belonged to him. Ms. Edwards testified that she was with appellant when he actually sold methamphetamine to someone. She saw him leave drugs with someone. Moreover, approximately $1,073 in cash was found in the apartment. Ms. Edwards testified that the cash was obtained through gambling. Although appellant also gave a statement that he won the money gambling, the credibility of witnesses is an issue for the jury and not the court.

---

[1] Methamphetamine is not specifically listed in § 5-64-401(d) (Supp. 2003). However, there is a general provision for a controlled substance falling into the category of a "stimulant drug." The presumption of intent to deliver will attach to a "stimulant drug" if the quantity possessed is in excess of 200 milligrams. *See Rabb v. State*, 72 Ark.App. at 400, 396 S.W.3d at 14, n.1.

*Howard, supra* (citing *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001)). When viewed in the light most favorable to the State, we hold that the trial court had substantial evidence to support the possession-with-intent-to-deliver conviction.

## II. Denial of Motion to Suppress Items Seized Through a No-knock, Nighttime Search Warrant

■    Second, appellant argues that the trial judge erred in issuing a nighttime, no-knock search warrant. In *Saulsberry v. State*, 81 Ark. App. 419, 102 S.W.3d 907 (2003), this court stated that:

> The supreme court in *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003), recently clarified the standard of review of a suppression challenge. The standard is that we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court.

Appellant argues that the facts of this case do not justify a no-knock, nighttime search warrant. Arkansas Rules of Criminal Procedure 13.2(c) (2003) states that:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

The search warrant in this case stated in part that, "reasonable cause exists to believe that the place to be searched is difficult of speedy

access, the objects to be seized are in danger of imminent removal and the warrant can only be safely or successfully executed at nighttime or under circumstances of occurrence of which is difficult to predict with accuracy."

At the suppression hearing, Officer Paul Smith testified that certain exigent circumstances existed which justified the nighttime, no-knock search warrant. Specifically, Officer Smith testified that in the days just prior to the application for the warrant on appellant's home his unit had been collecting information concerning appellant and some of his associates. Officer Smith witnessed a confidential informant go into appellant's apartment. The informant obtained methamphetamine from the residence. While the informant was inside, he saw additional items of drug paraphernalia. Moreover, there were two staircases leading to the apartment. The informant was told by Ms. Edwards that she could see both staircases through the window. Without being seen, she could see who was outside prior to unlocking the door. Also, both appellant and Ms. Edwards told the informant that if they were to see law enforcement through the window that they would attempt to flush the methamphetamine and destroy the evidence. Officer Smith also stated that he had information that several apartments in appellant's complex were associated with appellant's activities, and the officers were concerned that information of their arrival would spread throughout the suspicious apartments. The reasonableness of the officers' decision to enter without knocking and announcing their presence must be evaluated as of the time they entered the premises. *Ilo v. State*, 350 Ark. 138, 85 S.W.3d 542 (2002). It is the duty of the courts to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement. *Id.* We find that these facts are sufficient to justify a no-knock search.

With respect to the nighttime-search provision, the search warrant authorized that a search could be conducted at any time during the day or night. However, the search was executed during normal hours, specifically, 6:20 in the morning. Under such circumstances, the trial court did not err in denying appellant's motion to suppress.

### III. Denial of Appellant's Motion in Limine

Appellant's third argument on appeal is that the trial court erred in allowing the testimony of two Oklahoma Police Officers. Arkansas Rule of Evidence 404(b) (2003) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court, and this court will not reverse absent a showing of manifest abuse. *Donovan v. State*, 71 Ark. App. 226, 32 S.W.3d 1 (2000). Evidence that is offered pursuant to Rule 404(b) must be independently relevant. *Id.* (citing *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999)). Evidence is independently relevant if it tends to prove a material point and is not introduced solely to prove that the defendant is a bad person. *Id.* (citing *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998)). However, even if independently relevant, evidence of other crimes may still be excluded if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice to the defendant. Ark. R. Evid. 403 (2003); *Johnson v. State*, 337 Ark. 477, 989 S.W.2d 525 (1999).

Appellant sought to exclude the testimony of two Oklahoma police officers regarding appellant's arrest in Oklahoma in April 1999, where the officers discovered syringes in appellant's vehicle, one of which tested positive for methamphetamine. At a hearing on appellant's motion in limine, the trial court ruled that the testimony of the two officers was relevant. It was, however, limited to testimony of items found that were related to drug paraphernalia. At trial, Chief Thomas Lowe of the Moffett, Oklahoma Police Department testified that on April 17, 1999, he was present when appellant was arrested. He identified items in State's Exhibit twenty-one as the items that were found in appellant's vehicle during an inventory search. The photograph of the items had appellant's name in bold yellow print across the bottom. He stated that he turned the items over to Investigator Loyd of Oklahoma's Twenty-Seventh Prosecutorial District Drug Task

Force. At this point, the photograph of the items was introduced into evidence and published to the jury. Investigator Loyd testified that one of the syringes found in appellant's vehicle tested positive for methamphetamine.

We hold that the admission of the Oklahoma police officers' testimony regarding appellant's previous arrest for possession of items of drug paraphernalia was improper under Rule 404(b). In *Sweatt v. State*, 251 Ark. 650, 473 S.W.2d 913 (1971), our supreme court found that in prosecuting appellant for LSD, the trial court erred in permitting the prosecution to introduce testimony showing that the defendant previously had marijuana in his apartment and had sold it. In *Sweatt*, the court stated that:

> Proof that Sweatt had sold marijuana on other occasions had no relevancy except to show that Sweatt had dealt in drugs before and hence was likely to have done so again. That is precisely the type of proof that must be excluded. If Sweatt was guilty of other crimes, then, as we said in *Alford*, "each may be examined separately in a court of law, and punishment may be imposed for those established with the required certainty. . . ."

*Id.* at 652, 473 S.W.2d at 914. *See also Rios v. State*, 262 Ark. 407, 557 S.W.2d 198 (1977) (reversed and remanded for a new trial where it was clearly error for the trial court to admit the evidence of other sales or delivery of drugs to simply prove Rios made a delivery on May the 4); *Evans v. State*, 287 Ark. 136, 697 S.W.2d 879 (1985) (reversed and remanded where it cannot be said that, merely because two burglaries occurred on the same night and involved items of similar nature, that the State should be allowed to reference the other burglary to implicate appellant) (superceded by statute on the separate issue of juvenile transfer).

We have held that when error is slight and the evidence of guilt is overwhelming that we can declare that the error was harmless. *See Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999) (citing *Kidd v. State*, 330 Ark. 479, 955 S.W.2d 505 (1997)). However, although we agree that the evidence of appellant's guilt in this case might be considered overwhelming, we cannot agree that the error was slight. Our supreme court has held that an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *See Hamilton v. State*, 348 Ark. 532, 74 S.W.3d

615 (2002). Our supreme court has also recognized that there are circumstances where statements or actions in the jury's presence are so highly prejudicial that they violate the accused's right to a fair trial, and no admonition to the jury can cure them. *See Dean v. State*, 272 Ark. 448, 615 S.W.2d 354 (1981) (holding that testimony by a court official was a flagrant violation of appellant's right to a fair and impartial trial as guaranteed by the Arkansas and United States Constitutions and was so clearly prejudicial that the error could not be removed by the trial court's admonishing statement).

While a cautionary instruction was given in this case, given the facts presented here the error was not cured by the cautionary instruction. The State's first two witnesses testified as to evidence found in appellant's vehicle during an inventory search in Oklahoma in April 1999 that occurred over three years prior to the trial on the current charges. The incident in April 1999 was no more than an arrest; there is no evidence of any charges being filed or of any conviction. This served as the first testimony that the jury heard in this trial as well as the first piece of evidence shown to the jury. The evidence was highly prejudicial and had no independent relevance; therefore, we cannot say that the error was slight or that it was cured by the cautionary instruction. Because we hold that the introduction of the Oklahoma officers' testimony was error, we reverse and remand for a new trial.

PITTMAN and GLADWIN, JJ., agree.