Cite as 2022 Ark. App. 35

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-21-342

| | |
|---|---|
| AMANDA YANCY<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** January 26, 2022<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-18-450]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**LARRY D. VAUGHT, Judge**

Amanda Yancy appeals the Sebastian County Circuit Court's order terminating her parental rights to her three children. Yancy's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and caselaw stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9(j) (2021); *Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Our court clerk mailed a certified copy of counsel's motion and brief to Amanda's last-known address informing her of her right to file pro se points for reversal. Amanda has not filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) has not filed a brief. We affirm the order terminating Amanda's parental rights and grant her counsel's motion to withdraw.

On November 13, 2018, DHS filed a petition for dependency-neglect with regard to Amanda's children: JY (born October 8, 2005), BY (born March 24, 2007), and KY (born

September 11, 2009). In the affidavit attached to the petition, DHS alleged that in May 2018, it opened a protective-services case on the Yancy family after Amanda tested positive for methamphetamine and marijuana, and the children's co-guardian, their grandmother Mary Grace Shelafoe, tested positive for methamphetamine.[1] The circuit court allowed Mary to retain custody of the children and ordered DHS to provide parenting classes, a drug-and-alcohol assessment, drug therapy, and random drug screens on Mary. The affidavit further alleged that during a September protective-services-case hearing, the circuit court heard testimony that Mary had tested positive for amphetamine and methamphetamine on May 17; July 12, 24, and 31; and August 20 and 27. The court ordered the children into DHS custody. The affidavit also alleged that the children would not be safe in the custody of their parents on the bases of Amanda's admitted drug use and Johnny Yancy, Jr.'s (the children's father), criminal history and prior reports of his neglect and inadequate supervision.

After an adjudication and review hearing, the court entered a March 12 order finding JY, BY, and KY dependent-neglected due to the parental unfitness of Amanda and Johnny. The court set the goal of the case as permanent custody with the Shelafoes and focused the case plan on them by ordering a number of services for them.

Several review hearings followed, and orders were entered on July 2 and October 1, 2019; and January 3, 2020, wherein the court found that DHS was providing services to the Shelafoes. At a March 12, 2020 review hearing, the circuit court heard testimony about Mary's continued drug use. The court thereafter entered an April 9 order finding that the children

---

[1]The children's other co-guardian is their grandfather and Mary's husband, Roger Shelafoe.

could not return to the Shelafoes' custody. The court changed the goal to adoption after termination of the parents' parental rights and dismissed the Shelafoes from the case.

On April 24, DHS filed a petition to terminate the parental rights of Amanda and Johnny. Following a termination hearing, the circuit court entered an order on July 24 granting the petition against Johnny. However, the court found that DHS had failed to provide meaningful efforts to Amanda, that she did not fail to maintain contact with her children because of her own actions, and that she had "essentially been ignored during this case." The court ordered DHS to make the necessary referrals for Amanda to complete services and ordered her to obtain and maintain stable and appropriate housing, income, and transportation; visit her children regularly; submit to a drug-and-alcohol assessment and complete the recommended treatment; attend a medication-management appointment; submit to random drug screens and hair-follicle testing as requested by DHS; and complete parenting classes. The court set concurrent goals of the case: reunification with Amanda and adoption following termination.

A permanency-planning order was entered on September 29 finding that Amanda had housing, although it was not her own; she had transportation and a valid driver's license; she had employment but "not for a long period of time"; and she had visited her children. The court also found that she had not completed drug treatment and that her credibility was questionable because she testified that she had not used illegal drugs in five months, yet a drug test in June 2020 was positive for methamphetamine and marijuana. The court ordered her to submit to hair-follicle tests and maintained the goal of reunification.

On January 12, 2021, DHS filed a petition for termination of parental rights against Amanda alleging three grounds: noncustodial failure to remedy, failure to provide significant material support for the children or to maintain meaningful contact with them, and aggravated circumstances because there was little likelihood that further services would result in reunification. DHS also alleged that termination was in the children's best interest because they were likely to be adopted, and they would be subject to potential harm if placed with Amanda.

At the termination hearing, five witnesses testified, including Amanda, and documentary evidence was introduced. At the conclusion of the evidence, the circuit court orally granted DHS's petition, finding that DHS had proved the noncustodial failure-to-remedy and aggravated-circumstances grounds and that termination was in the children's best interest. On May 7, the court entered a written order terminating Amanda's parental rights, and Amanda appealed. Her attorney has filed a motion to withdraw along with a no-merit brief contending that there is no arguable merit for appeal.

In dependency-neglect cases, if after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit brief and move to withdraw. Ark. Sup. Ct. R. 6-9(j)(1). The brief must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). The brief must also include a statement of the case and the facts containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B).

One of the adverse rulings in this case is the circuit court's termination decision. We review termination-of-parental-rights cases de novo. *Williams v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 386, at 3. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. *Id.* The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Id.* The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id.* at 3–4. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* at 4. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

The circuit court found that Amanda had subjected her children to aggravated circumstances pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* (Supp. 2021). Aggravated circumstances, as applied to the case at bar, is defined as a determination made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*.

Amanda's counsel explains that there is little likelihood that services to Amanda will result in successful reunification because the evidence demonstrates that she has not complied sufficiently with the court's orders or the case plan. For example, Amanda testified that she had been homeless for years and had secured housing just two months prior to the termination

hearing. She said that her landlord did not initially require her to pay the deposit or the full amount of the rent and that her mother and sister had given her money to help her make the payments Amanda later made.

Amanda testified that she had been working part time at Stonewall Jackson Inn since November 2020, but she provided no proof of employment. She claimed that she had been approved for disability benefits and that payment for that "was fixing to be released"; however, she failed to present proof of this claim, too. Amanda testified about she owes $8,000 in court fines and that she owes back child support. The record reflects that her child-support arrearage is over $16,000. Amanda stated that she purchased a vehicle a month prior to the termination hearing but did not have a driver's license because of unpaid fines of $340.

The record also demonstrates that Amanda has not complied with court orders to participate in drug treatment. While she submitted to drug-and-alcohol assessments on June 30, 2020, and March 10, 2021, she failed to complete the group and individual counseling sessions recommended in those assessments.[2] And significantly, Amanda tested positive for marijuana and methamphetamine in a June 25, 2020 drug screen, and she tested positive for marijuana and methamphetamine in 90-day and 180-day hair-follicle tests administered in October 2020. Despite evidence of these positive drug tests, Amanda testified at the hearing that she last used methamphetamine in January 2020.

There was evidence that Amanda had a negative drug test in March 2021. However, Amanda's caseworker, Bailey Murray, testified that Amanda knew about the test in advance.

---

[2]Amanda also had a drug-and-alcohol assessment in June 2018 as part of the protective-services case. She failed to attend any of the counseling classes recommended in that assessment.

And the circuit court further called this negative result into question because Amanda testified that she had obtained her medical marijuana card and was smoking marijuana one to two times a day, yet her March 2021 drug screen was negative for marijuana.

Finally, the evidence shows that Amanda's relationship with her children is tenuous. Elise Lundsford, a licensed professional counselor who treated BY and KY from June to December 2020, testified that she facilitated visits between BY, KY, and Amanda. Elise testified that early on, KY refused to participate in visitation with Amanda. KY reported that he did not want to be with Amanda and that he wanted to return to his grandparents, and if that was not possible, he wanted to be adopted by someone else. Elise testified that BY participated in visits but was not engaged. BY also stated that she did not want to be with Amanda; she preferred to be with her grandparents or be adopted. Elise testified that she ultimately recommended that visitation be discontinued because the children were regressing.

Angela Peters, another counselor for BY and KY, testified that the children did not want to visit Amanda. Angela testified that the children were attached to one of their foster parents and to their grandmother.

DHS program assistant Michelle Tenny testified that she supervised the visitation between BY, KY, and Amanda from October 2020 to January 2021. Michelle testified that BY and KY were not engaged with Amanda during visits. BY showed no affection toward Amanda. Michelle said that KY had one visit with Amanda and then refused future visits with her.

Bailey, the caseworker, confirmed the lack of a bond between BY and KY and Amanda. Bailey testified that BY and KY want Amanda's parental rights terminated. Bailey testified that

the lack of bond between Amanda and her children, her failure to complete drug treatment, and her children being in DHS custody for over two years serve as the bases for DHS's recommendation that her parental rights be terminated.

In sum, this evidence supports the circuit court's finding that there is little likelihood that services to Amanda will result in successful reunification because she has consistently failed to follow the orders of the court and her case plan. She has refused to attend and complete three drug-treatment programs: one in the protective-services case and two in the dependency-neglect case. She has failed to remain drug-free. And she has failed to form a bond with her children. The efforts Amanda has made in obtaining housing, employment, and transportation were made at the last minute, required the assistance of her family, and fail to demonstrate stability or progress. This court has repeatedly held that the children's "need for permanency and stability will override [a parent's] eleventh-hour efforts." *Wright v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 263, at 12, 576 S.W.3d 537, 545. A parent's continued inability to protect and care for her child and failure to benefit from the services provided demonstrate little likelihood that further services will result in a successful reunification. *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, at 8, 578 S.W.3d 312, 317–18. In light of the evidence, we hold that there is no merit to the appeal of the circuit court's finding that there was little likelihood that services to Amanda would result in successful reunification.

Counsel's no-merit brief also recites facts sufficient to support the circuit court's best-interest finding. Caseworker Bailey testified that all three of Amanda's children are adoptable. With regard to BY and KY, Bailey stated that they were currently living with a foster family that was interested in adopting them. Bailey also addressed JY's intellectual disability and stated

8

that it would not be an obstacle to his adoption. This testimony is more than sufficient evidence for adoptability under our court's caselaw. *Reed v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 416, at 7, 375 S.W.3d 709, 711 (affirming the circuit court's adoptability finding on the basis of the caseworker's testimony that the child was likely to be adopted if the termination petition was granted); *Cobbs v. Ark. Dep't of Hum. Servs.*, 87 Ark. App. 188, 199, 189 S.W.3d 487, 493 (2004) (affirming the circuit court's adoptability finding on the basis of the caseworker's testimony that although the children had issues to work through, they could be adopted).

Amanda's counsel also explains why returning the children to Amanda's custody would subject them to potential harm. As found by the court and demonstrated by the evidence, Amanda's children would be at risk of physical and psychological harm because she has demonstrated no long-term stability despite the children having been in DHS custody over two years. She was homeless for most of that time, leasing a house just two months prior to the termination hearing. To secure housing, Amanda required financial help from her mother and sister. One of a child's most basic needs is a stable home. *Williams*, 2021 Ark. App. 386, at 7.

The record also demonstrates that not only is Amanda's housing unstable, but so is her employment and transportation. She has not had either very long, and she relies on others to pay her current expenses, like rent, and her outstanding fines and debts. Because she lacks a driver's license due to unpaid fines, she depends on others for transportation.

Finally, the evidence shows that Amanda's children have little bond with her—two of them reported to DHS that they did not want to live with her. She failed to provide any support

9

to her children despite being ordered to do so. She has not completed drug treatment and failed to convince the circuit court that she worked diligently to try and do so. And she tested positive for illegal drugs during the case.

In *Guardado v. Arkansas Department of Human Services*, 2019 Ark. App. 16, at 5–6, 568 S.W.3d 296, 299, this court affirmed the circuit court's potential-harm finding on the basis of evidence of the mother's lack of income and inadequate housing, reliance on others for financial and transportation support, and unwillingness to comply with the case plan. In *Guardado*, we held that the mother's decisions were clearly against the health, safety, and welfare of her children. *Id.* at 6, 568 S.W.3d at 299. Likewise, the evidence in this case supports the circuit court's finding that Amanda's decisions are clearly against the health, safety, and welfare of her children. Her efforts at stability were insufficient to prevent termination, and her progression in this case was too little, too late for her to achieve reunification with her children within a reasonable time from their perspective. Accordingly, we conclude that counsel has adequately explained why there is sufficient evidence to support the court's finding of adoptability and potential harm and why appealing its best-interest determination would be wholly frivolous.

There is one other adverse ruling that counsel discusses. At the close of DHS's case, it offered exhibit 7: certified copies of a criminal information for two counts of theft by receiving filed against Amanda in 2020 and the resulting sentencing order entered in that case. Amanda's counsel objected, asserting it was improper character evidence. The court overruled the objection, stating that it would be admitted for the purpose of impeachment because "the mother testified she had no other fines or costs, and then I think contradicted herself."

This court reviews the admission of evidence by the circuit court using an abuse-of-discretion standard. *Ellis v. State*, 2012 Ark. 65, at 10, 386 S.W.3d 485, 490. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Id.*, 386 S.W.3d at 490.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ark. R. Evid. 404(b) (2021). Evidence that is offered pursuant to Rule 404(b) must be independently relevant. *Holt v. State*, 85 Ark. App. 308, 317, 151 S.W.3d 1, 7 (2004). Evidence is independently relevant if it tends to prove a material point and is not introduced solely to prove that the defendant is a bad person. *Id.*, 151 S.W.3d at 7. However, even if independently relevant, evidence of other crimes may still be excluded if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.*, 151 S.W.3d at 7 (citing Ark. R. Evid. 403).

The circuit court expressly stated that it was admitting exhibit 7 not as character evidence that Amanda had been convicted of two counts of theft by receiving but for impeachment evidence. In other words, the court admitted exhibit 7 because it was independently relevant on the issue of Amanda's credibility, which was a central issue at the termination hearing. Accordingly, there is no merit to the argument that the circuit court abused its discretion in admitting exhibit 7.

In sum, we hold that Amanda's counsel has adequately addressed the two adverse rulings in this case and has complied with both the court rules and the *Linker-Flores* requirements for no-merit briefs. Accordingly, we affirm the circuit court's termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GRUBER and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.