Willie Mae HARRIS *v.* STATE of Arkansas

CR 86-54                                                    726 S.W.2d 267

Supreme Court of Arkansas
Opinion delivered March 23, 1987

*Louis F. Mathis,* for appellant.

*Steve Clark,* Att'y Gen., by: *Clint Miller,* Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Willie Mae Harris was convicted of first degree murder in the death of her husband, Clyde Harris, and sentenced to life imprisonment. Harris argues two points on appeal, which we find meritless.

The deceased was found lying face down in bed with the covers pulled over him. He was killed with one shot from a .25 caliber automatic pistol. There was a bullet hole through the bed covers and powder burns around the hole. There were no powder burns on the deceased. The gun was found next to the body. Harris gave a statement to the police, stating the shooting was accidental.

Harris first argues there was insufficient evidence that she killed her husband with premeditation and deliberation,

requisites for first degree murder. Premeditation and deliberation need not exist for any particular length of time. *Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980). They can be inferred from the circumstances of the case, "such as the character of the weapon used, the manner in which it was used, the nature, extent and location of the wounds inflicted, the conduct of the accused and the like." *Mason* v. *State*, 285 Ark. 479, 688 S.W.2d 299 (1985); *Parker* v. *State*, 290 Ark. 158, 717 S.W.2d 800 (1986).

Harris did not deny that she shot her husband; instead, she argues she had no intent to shoot him. She claims the gun accidentally discharged. She said that her husband acted insane. Every night he would go through a transformation—his facial features would change, he would say and do strange things, and he would threaten to kill her. On January 30, 1985, Harris testified she and her husband went to bed about 1:30 a.m. He accused her of giving him gonorrhea and attempted to have anal sex with her, but she refused. He then started calling her names and slung her around. Harris reached in her purse, which was on the floor beside the bed, and pulled out a loaded .25 caliber automatic pistol. She said she kept the gun beside the bed because Clyde's threats had frightened her, and he kept two loaded rifles in the corner of the bedroom and a loaded pistol under the mattress. She said she knelt over Clyde, who was lying down, hit him with the gun, and the gun fired.

Harris' story was contradicted by the state's evidence. There was evidence that the gun did not discharge next to the deceased's skin. Dr. Lee Beamer, from the state crime lab, testified the entrance wound was to the right of the breast bone, and the bullet passed through several vital organs. The path of the bullet was straight and not deflected. It traveled backward and downward from the deceased's right to his left. In order for the bullet to follow this path, the location of the gun would have been above and in front of the deceased and to his right. Also, there was evidence that the gun would not accidentally discharge. A firearms examiner for the state crime lab testified that jarring would not cause the weapon to discharge. He hit the gun with a mallet and it did not accidentally discharge. There were no signs of violence found in the bedroom.

Harris could not explain how she hit her husband, only that

the gun was somewhere in her palm; she did not believe her finger was on the trigger. She did not know where she hit him or how many times. There were no bruises or abrasions on the body. Harris stated first that she was in fear of her life, and she kept the gun beside her bed because of her fear. Later she stated she was not in fear of her life. She was angry at the time she pulled the gun out of her purse. Harris also contradicted herself about the reason she and her husband reconciled. They were separated and reconciled about 18 days prior to the shooting. In her statement to the police, Harris stated the couple decided to get back together; however, she stated at trial she went back to Clyde because he threatened suicide.

The jury has the duty of weighing the evidence. *Hendrickson* v. *State*, 290 Ark. 319, 719 S.W.2d 420 (1986). It may accept or reject any part of a witness' testimony, and we are bound by the jury's conclusion on a witness' credibility. *Burris* v. *State*, 291 Ark. 157, 722 S.W.2d 858 (1987). It is obvious that the jury did not believe Harris' testimony, and there is substantial evidence to support the conviction for first degree murder.

Harris next argues the trial court erred by not instructing the jury on the lesser offense of negligent homicide. The jury was instructed on first and second degree murder and manslaughter. We have repeatedly held there is no error in failing to give an instruction on one lesser offense if instructions on other lesser offenses are given, and the jury returns a verdict for the greater offense. *Sherron* v. *State*, 285 Ark. 8, 684 S.W.2d 247 (1985).

All other objections made during the trial were examined pursuant to Rule 11(f), Rules of the Supreme Court, and we find no error.

Affirmed.