Ruben MARMOLEJO *v.* STATE of Arkansas

CA CR 07-899                                              284 S.W.3d 78

Court of Appeals of Arkansas
Opinion delivered May 14, 2008

*George B. Morton,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Deborah Nolan Gore,* Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Ruben Marmolejo was convicted in a jury trial for being an accomplice to delivery of methamphetamine and was sentenced to twenty-five years' imprisonment and a fine of $15,000. As his sole point on appeal, Marmolejo contends that the trial court abused its discretion by admitting evidence of prior bad acts under Arkansas Rule of Evidence 404(b). We hold that any error in the admission of the evidence was harmless, and we affirm.

The charge against Marmolejo resulted from an undercover officer's purchase of methamphetamine at the home of Tyler West on February 16, 2006, when Marmolejo and Cody Poole were there. Marmolejo filed a motion in limine to exclude anticipated testimony by West and Detective Andy Lee, an undercover narcotics investigator, that Marmolejo had been West's drug supplier in the past. The State argued at the pretrial hearing that West's testimony would establish his credibility and explain why the case proceeded as it did. According to the State, West's testimony would explain "why a drug transaction was set up with Ruben Marmolejo, and why he was contacted and these events were set into motion as a whole. The State believes it is necessary in order to establish its case today that Ruben Marmolejo was an accomplice to the delivery in question." The State also anticipated, in order to establish why the officers "proceeded as they did," bringing out through Detective Lee's testimony "that West told him he could set him up with one of his suppliers and that he named that supplier as Ruben Marmolejo."[1]

Marmolejo responded that being West's past supplier was not relevant to the question of what happened inside the house when Poole delivered the drugs on February 16, 2007. He also argued that any probative value of proof of his previous relationship with West would be grossly outweighed by the prejudicial effect of testimony "in the very beginning" that Marmolejo was a drug dealer.

The court ruled that the testimony would be allowed, stating as follows:

> The reason I think that it is relevant is that we have to assume the defense will not present any defense. The burden in this case is on the prosecution to prove its case beyond a reasonable doubt and that the credibility of the State's witnesses has a bearing on burden and whether they can meet it.
>
> I think that to grant the motion in limine is, in essence, forcing the prosecution to try its case in a vacuum. If their case develops, as I think it is going to develop, you have this Tyler West making assurances to Andy Lee of what he can do and why. Then you have Tyler West making contact with Mr. Marmolejo. I think the testi-

---

[1] Detective Lee Kelley (Kelley) was involved with Andy Lee (Lee) in the controlled buy, and each gave testimony in this case.

mony is admissible to show a state of mind and to explain his actions. Otherwise, as I said, you have got the State trying to prove its case in a vacuum.

The prosecutor informed the jury during opening statements that West told investigators "he could set up a drug deal with his supplier and he named that supplier as Ruben Marmolejo." As the State's first witness, Detective Lee testified that West was "very cooperative" on February 16, 2006, when officers executed a search warrant at West's residence, where Lee had made other drug buys. Lee testified that West said he owed Marmolejo $1300 for fifteen grams of methamphetamine West had taken to his residence after stealing it from Marmolejo. Lee stated, "West agreed to work with us and set us up with two of his suppliers. He identified Cody Poole and Ruben Marmolejo as the suppliers." The trial court then instructed the jury that the testimony was being allowed into evidence, not as proof that Marmolejo had been a drug dealer or supplier at some previous time, but only to explain West's state of mind and the actions he took, should the jury believe the testimony.

Lee testified that the following events occurred in his presence at West's residence. West telephoned two people, whom he identified as Marmolejo and Poole, to arrange a delivery of methamphetamine that same night. Marmolejo and Poole arrived at the residence in Marmolejo's van. Poole began negotiating with Lee but looked to Marmolejo for approval or disapproval of the prices discussed, which Marmolejo gave by nodding or shaking his head. Lee then negotiated directly with Marmolejo, settling on $2400 for two ounces of methamphetamine. Poole handed the tape-wrapped drugs to West, who handed them to Detective Lee Kelley, who handed them to Lee, who confirmed the weight with Marmolejo and Poole before giving the money to Poole. Marmolejo was present the entire time. Lee testified, "Based upon my experience and training, Ruben Marmolejo was definitely in control of this drug transaction."

West testified that he was "busted" when the search warrant was executed at his house. He stated, "I discussed with the officers making a buy with Ruben Marmolejo. He is a dealer." The court then directed the jury's attention to the limiting instruction previously given during Detective Lee's testimony. The court instructed the jury that, similarly, West's testimony about his relationship with Marmolejo was allowed for the limited purpose

of explaining West's state of mind and what action he took that evening, and not as proof that Marmolejo was a drug dealer or had done previous dealings.

After the limiting instruction was given, West testified that he had once been a dealer for Marmolejo. Regarding the events of February 16, 2006, West stated that he set up the deal for two ounces of methamphetamine to be delivered and for the $1300 he owed Marmolejo to be picked up. West said that Poole and Marmolejo came to the house, that Poole and Lee argued over the price, that Poole looked at Marmolejo for each price, and that Marmolejo would shake his head to indicate yes or no.

Poole testified that he went to Marmolejo's house after receiving a telephone call to come, and methamphetamine was in the garage when he arrived. Using scales that were in the garage and tape from Marmolejo's house, Poole wrapped the drugs into packages. When a call came on Marmolejo's phone, Poole and Marmolejo traveled to West's residence to make the deal, with Marmolejo driving his van. Poole handed the drugs to Marmolejo on the way out the door, Marmolejo handed them back on the way to West's house, and Poole threw two ounces of methamphetamine on the coffee table in West's living room. Poole testified that during negotiations he was not watching Marmolejo, who was "within feet" behind him for the entire transaction and could hear what was going on.

Detective Lee Kelley testified that he helped execute the search warrant and that West said he could introduce the officers to his suppliers. Kelley testified that West made phone calls to arrange for the delivery of the methamphetamine, that Marmolejo and Poole showed up, that Poole put the drugs on the table, that Lee and Poole initially talked about price, and that Lee began dealing with Marmolejo. Kelley said that Poole looked at Marmolejo to get the "yea or nay" on each price discussed. Kelley testified that Marmolejo, who could see and hear what was going on, watched the entire transaction and agreed with Poole that "the dope would weigh out." Kelley characterized Marmolejo as "pretty much the main guy" giving the okay on prices and said that "a lot of dealers have guys underneath them that deal for them."

### Evidence of Prior Bad Acts

In issues relating to the admission of evidence under Ark. R. Evid. 401, 403, and 404(b), a trial court's ruling is entitled to great

weight and will not be reversed absent an abuse of discretion. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Even when a circuit court errs in admitting evidence, the appellate court will affirm the conviction and deem the error harmless if the evidence of guilt is overwhelming and the error is slight. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007); *Anderson v. State*, 71 Ark. App. 200, 33 S.W.3d 173 (2000). To determine if the error is slight, we can look to see if the defendant was prejudiced. *Wooten v. State*, 93 Ark. App. 178, 217 S.W.3d 124 (2005).

Here, the jury had before it testimony that West arranged for a methamphetamine deal by phoning Marmolejo and Poole. Poole testified that he packaged the methamphetamine in Marmolejo's garage, using scales that were there and tape from Marmolejo's house. Poole handed Marmolejo the packaged drugs, Marmolejo handed them back, and Marmolejo drove his van to West's house for the drug deal. Marmolejo could see and hear the entire transaction in the living room. According to the undercover officers, Marmolejo indicated his approval or disapproval of pro-posed prices by nodding or shaking his head, the final price was negotiated directly with him, and he confirmed the weight of the drugs.

West testified that he called Marmolejo and set up the deal. Detective Kelley stated that many dealers "have guys underneath them that deal for them" and that Marmolejo was "pretty much the main guy who was giving the okay on prices." Kelley con-cluded "without a doubt" that Marmolejo was in charge of the drug deal. Detective Lee testified, based on his experience and training, that "Marmolejo was definitely in control of this drug transaction."

We hold that, even if testimony referring to Mar-molejo as a drug dealer or supplier should have been suppressed, the error was harmless in view of overwhelming proof of guilt as

presented through the testimony as summarized above.[2] Prejudice is not presumed, and a conviction will not be reversed on appeal absent a showing of prejudice by the defendant. *Eastin, supra.*

Affirmed.

PITTMAN, C.J., and GLADWIN, GLOVER, and VAUGHT, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and remand because the error in this case was not slight. Where the error is slight and the evidence is overwhelming, we can declare error harmless. *See Von Holt v. State,* 85 Ark. App. 308, 151 S.W.3d 1 (2004). Conversely, where the evidence supporting the conviction is overwhelming but the error is *not* slight, the error is prejudicial. *See id.* Error is not slight or harmless where statements in the jury's presence are so prejudicial that no admonition to the jury will cure them, and where they violate an accused's right to a fair trial. *See id.* (reversing and remanding for a new trial based on the erroneous admission of evidence that the defendant had previously been arrested for possession of drug paraphernalia, even though a cautionary instruction had been given, where the incident occurred over three years prior to the current prosecution, the prior incident was no more than an arrest, and the evidence had no independent relevance). That is the case here.

Recently, the Arkansas Supreme Court reversed and remanded for a new trial based on a very similar Rule 404(b) violation. *See Phavixay v. State,* 373 Ark. 168, 282 S.W.3d 795 (2008). The *Phavixay* defendant was convicted of delivery of methamphetamine in a controlled buy. The trial court permitted the confidential informant (CI) and police officer to testify about another controlled buy in which the defendant sold drugs to the CI only ten days prior to his arrest in that case. The supreme court rejected the State's argument that the testimony was necessary to

---

[2] The dissent relies in part upon *Phavixay v. State,* 373 Ark. 168, 282 S.W.3d 795 (2008), in which our supreme court reversed and remanded the appellant's conviction for delivery of methamphetamine upon holding that evidence of his prior drug transaction was error under Rule 404(b). Because *Phavixay* did not analyze the issue of harmless error, it does not guide our present decision.

explain the relationships between the parties and the ongoing drug operation or that it was probative due to the proximity in time to the instant offense.

The *Phavixay* court reversed and remanded for a new trial due to the Rule 404(b) violation, even though it acknowledged that the two controlled buys were "similar and in close proximity of one another." *Id.* It reasoned that intent was not an issue, as the defendant was charged only with delivery, and concluded that it could not perceive any reason for admitting the evidence except to show the defendant was likely to have dealt drugs in the instant case because he had done so before. Notably, the *Phavixay* court reversed even though a proper limiting instruction was issued.

As in *Phavixay*, the testimony in the instant case by West and Officer Lee that appellant was a drug dealer or drug supplier who had sold drugs to West on a prior occasion served the sole purpose to prove that appellant was likely to have dealt drugs in the instant case because he had done so before. As appellant argues, "The State wanted to peg the Appellant as a drug dealer from the very first moment the jury heard about him" and "the State wanted the jury to hear the words 'drug dealer' or 'drug supplier' as many times as possible." In its opening argument, the second statement made by the prosecutor was that West named appellant as his "drug supplier." Then, the jury heard testimony from Lee, who quickly explained how he came to arrest appellant, then testified that West identified appellant and Poole as his suppliers. Immediately after Lee testified, West testified and almost immediately identified appellant as a drug dealer.

The instant facts provide an even *more* compelling basis for reversal than the *Phavixay* and *Von Holt* facts. For evidence of prior drug sales to be admissible, the State must *prove more than the fact that a prior drug transaction occurred between the same parties*; it must show that there is a very high degree of similarity between the prior transaction and the current transaction and that prior sales are not too remote in time from the instant alleged transaction. *See Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998). The State argues that the testimony was necessary to prove that appellant was "*similarly* supplying Mr. Poole" with narcotics. (Emphasis added.) Yet, the testimony about the prior sale provided no details about the other transaction by which the trial court or the jury could have concluded that the transactions were similar.

In *Phavixay*, the two sales were similar and the prior sale took place only ten days before the defendant's arrest; the *Von Holt*

defendant was arrested three years before due to items found in an inventory search of his vehicle. Thus, in those cases, even where the nature of the prior offenses and the dates were known, the evidence was inadmissible under Rule 404(b). Here, there was absolutely no testimony regarding when the alleged prior sale took place and no testimony to establish any similarity between the two sales. Surely, a prior alleged sale, the nature of which was not established, and which occurred at an *unknown* time, is not relevant.

Simply phrased, the testimony labeling appellant as a "supplier" or a "drug dealer" was probative of *nothing except* the fact that appellant was alleged to have sold drugs to West on one prior occasion, at some unknown time in the past. Yet the State was permitted to plaster the drug dealer/drug supplier label on appellant from the inception of the case, accomplishing its goal of implanting in the mind of the jury that appellant dealt drugs *this time* because he had done so before. *See Von Holt, supra* (reversing and remanding on a Rule 404(b), in part, because the inadmissible evidence was the first evidence that the jury heard in the trial, as well as the first piece of evidence shown to the jury).

Also, as in *Phavixay*, intent was not an issue in this case because Marmolejo was charged as an accomplice to the delivery of methamphetamine. Further, just as the limiting instructions in *Phavixay* and *Von Holt* did not cure the prejudice, the limiting instruction issued in this case did not cure the prejudice, first, because the testimony was not independently relevant yet was essentially the first evidence that the jury heard. The testimony was not relevant to prove West's credibility, as his credibility had not been challenged and as a witness's credibility is not the subject of Rule 404(b). *See* Ark. R. Evid. 608(a); *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006); *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). Nor was the testimony relevant to corroborate Poole's testimony, which was corroborated by testimony of the police officers.

Second, the limiting instruction issued here could not have cured the prejudice because it erroneously informed the jury that it could consider the testimony as evidence of West's state of mind and the basis for West's actions, neither of which falls within the ambit of Rule 404(b). *See Lewis v. State*, 73 Ark. App. 417, 44 S.W.3d 759 (2001). I am at a loss to determine how a jury instruction can cure prejudice when it permits the jury to consider erroneously admitted evidence for improper purposes. *See Von*

*Holt, supra* (holding the Rule 404(b) limiting instruction did not cure the prejudice resulting from the evidence, where the evidence had no independent relevance).

For the above-stated reasons, I cannot agree that the error in this case was slight or harmless. Accordingly, I would reverse this case and remand for a new trial.