2010 Ark. App. 559
**James Clayton SOLOMON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1374.**

Court of Appeals of Arkansas.

Sept. 1, 2010.

David L. Dunagin, Fort Smith, for appellant.

Dustin McDaniel, Attorney General, Christian Harris, Assistant Attorney General, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant James Clayton Solomon was convicted on July 10, 2008, by a Washington County jury on charges of rape and failure to appear. He was sentenced as an habitual offender and received thirty-five years' imprisonment for the rape conviction and fifteen years' imprisonment for his conviction on the failure-to-appear charge. The circuit court ordered that ten years of the failure-to-appear sentence be served consecutively to the thirty-five-year rape sentence. He contends on appeal that the circuit court erred in denying his motion in limine seeking to prevent the introduction of testimony from various female witnesses. Because we hold that the testimony in question is admissible to show intent, we affirm.[1]

---

1. Appellant filed a second motion to relieve counsel and proceed pro se with the court on June 21, 2010. His initial motion was filed on April 20, 2010, and was denied by this court on May 5, 2010. The second motion is likewise hereby denied.

## Facts

An information was filed by the State on June 11, 2007, alleging in relevant part that appellant had committed two counts of rape in violation of Arkansas Code Annotated section 5-14-103 (Repl.2006). Before appellant's trial for rape, he filed a motion in limine [2] seeking to prevent (1) testimony regarding evidence of his federal conviction and probation revocation; (2) testimony from two women from Crawford County regarding alleged incidents of unwanted physical touching by appellant; [3] (3) testimony from Crawford County law enforcement related to the two women's charges; (4) and testimony from a woman whose claims against appellant were abandoned. Appellant argued in his motion that neither of the two Crawford County women alleged that he forcibly raped them. He claimed that their testimony would be inadmissible under Arkansas Rule of Evidence 404(b) (2008).

At the pretrial hearing on appellant's motion, the State argued that it wanted to present evidence concerning the women from Crawford County who alleged that appellant sexually assaulted them and another woman who alleged that appellant had raped her. Each of the women was single, and their ages ranged from twenty-two to thirty-four years. The State explained that appellant introduced himself as a body builder, a personal trainer with "Bodies in Christ," and that he started a conversation with each of them. The State claimed that he said he could help them in some way, offering a job. It was alleged that he arranged a meeting with each of them at his personal training facility. One facility was in Springdale, Arkansas, where the two rape events—the one for which he was standing trial, and the one at issue in the motion—were alleged to have occurred. The other facility was in Van Buren, Arkansas. The State alleged that when he would get the women alone in his building, he would begin to analyze, "professionally," their bodies. The State argued that he would discuss how he could help them and that he did this in a sales-pitch way and that he advertised himself as affiliated with "Bodies in Christ" in order to gain their trust. The State claimed that appellant would have them disrobe and then disrobe himself. Appellant was then alleged to have forcibly raped two of the women and to have made sexual contact with the other two.

The State argued that under Rule 404(b), other evidence of crimes, wrongs, or acts, is permissible to show motive, opportunity, intent, preparation, plan, knowledge, and identity and claimed that each incident had independent relevance showing appellant's motive, his preparation, and his plan. The State claimed that appellant's *modus operandi* could be shown by this evidence in that the acts were committed with the same or strikingly similar methodology.

Appellant argued that he came into contact with each woman in a different manner. He assisted one with her car when

---

**2.** The original motion in limine was filed on August 2, 2007, and an amended motion in limine was filed on January 11, 2008, along with an amended brief in support of defendant's motion in limine, which were denied by order filed on January 15, 2008. Another motion in limine was filed on July 2, 2008, along with a supplement to the motion in limine, which has attached to it a transcript from the January 7, 2008 revocation hearing held in the United States District Court, West-

ern District of Arkansas, Fort Smith Division. A hearing on that motion was held on July 7, 2008, prior to the trial, at which time the circuit court verbally denied the motion.

**3.** Appellant was charged in Crawford County, Arkansas, with two counts of sexual assault in the second degree, a Class B felony, as a result of these allegations.

he pulled beside her to point out that she had a broken tail light. The second woman was introduced to him through his sister-in-law. He met the woman in the instant case when she came to his place of employment for a job interview. He met the other woman, who alleged rape, while she was working as a waitress at Western Sizzlin, and she wanted him to help her with her body. Because he came into contact with each of the women under different, separate circumstances, appellant argued that the incidents do not fall under Rule 404(b).

The circuit court took the motion in limine under advisement, allowed appellant's attorney to be relieved as counsel, appointed a public defender to represent appellant, and reset the trial for February 12 and 13, 2008. On February 12, 2008, appellant failed to appear and an order for issuance of an arrest warrant was signed. A hearing on the motion in limine filed on July 2, 2008, was held on July 7, 2008, at which time the circuit court denied the motion consistent with its prior ruling on January 15, 2008.[4]

At the trial held on July 8 and 9, 2008, United States Marshall Corey Thomas testified that appellant had been located in Los Angeles, California, where he had been living under an assumed name. He was arrested and transported back to Arkansas. He had changed his appearance, in that he had grown out and dyed his hair and had also grown some facial hair. He had new tattoos covering his previous tattoos. It was only after a fingerprint analysis that authorities could confirm appellant's identity.

Officer Bill Stepp of the Springdale Police Department testified that Angelique Powell, the victim herein, reported to him on May 18, 2007, that she had been raped. Springdale Police Officer Richard Huddler testified that Ms. Powell told him that appellant raped her at Bodies for Christ Fitness Center in Springdale. She identified appellant in a photographic lineup. She also sketched out a rough diagram of the fitness center, which tracked with the layout that he found when he went to the fitness center. The only difference between the layouts was the bathroom, as Ms. Powell failed to include a hallway. Ms. Powell never told him that she had to unlock the door to leave the establishment.

Angelique Powell testified that she was checking out in line behind appellant in Walmart, and they struck up a conversation. She worked at a fitness club and was wearing a t-shirt with the logo on it. Appellant told her he was opening several personal training studios in the area and that he was looking for staff. He gave her a business card that read "Bodies for Christ, Personal Training." It was printed with a picture of appellant and his telephone numbers. Before he left Walmart, appellant told her, "Don't forget, it's Jamie Solomon, like King Solomon," and quoted scripture. She called him and set up an interview for 5:00 p.m.

She said she arrived ten minutes early and waited in a back office while he finished up with two clients. He came in and asked personal questions, then asked her to step into room two and asked what kind of exercises she did. She said that he began to demonstrate some exercises and then threw himself on top of her, flattened her to the floor and proceeded to rape her. She told him to stop, and he told her to shut up. She tried to fight and could not. She explained that he pushed her gym

---

4. Based upon our review of both the addendum and the record before us, there does not appear to be any written order filed related to this ruling announced by the circuit court at the hearing.

pants and underwear down around her knees and he took his own shorts off. She testified that appellant put his penis inside her vagina. She said she realized she could not stop the rape, so she quit struggling. At one point she looked down and saw that he was wearing a condom. When he finished, he got off of her, picked up his shorts, and went in the other room. She put her clothes on, got her purse from the office, and tried to get away. He followed her to the door. He said, "Look at it this way. Every guy you know, everyone around you is just trying to get into your pants, and I've already done that." She stated that she then unlocked the door and left.

She testified that she tried to block it out and pretend it did not happen. Appellant called her two days later and left a voice mail offering her a job. Sometime after that, he called again, at which point she called back and got his voice mail and asked him to never call her again.

Jacqueline Hicks testified that she met appellant through her sister. She was told that appellant was opening a gym and needed to hire some personal trainers. She went to her sister's apartment and met him. They met at 6:00 a.m. at his gym in Van Buren, Arkansas. He measured her body width, thighs, and breast area. He showed her different exercises and the equipment. At one point he had her sit on the ground. He touched her inner thighs, then began to rub her clitoris. She sat up and told him that what he was doing was not professional and then she left. She said that appellant stopped when she asked him to stop.

Kathryn Hobson testified that she lives in Fort Smith, Arkansas. She explained that in February 2007, appellant was driving behind her. He pulled up beside her and asked if she knew the tags were expired. He followed her to where she was

going. He introduced himself and gave her his card. He told her to contact him because her car was "junkie," and that he would put her in a nicer car. He told her that his sister had one that she had to let go. Because she needed a car, Ms. Hobson said that she called appellant and went to see him at the Bodies for Christ location in Van Buren. They were there alone, and she thought they would do some physical training. He asked to see her muscles, and he showed her his muscles. She said that he touched her inappropriately and got her down on the ground and pressed his penis against her vagina and started making comments about sex. She started crying. He then got up and told her that he was not able to help her unless she gave him sex first. She admitted to subsequently calling him some twenty-one times because she wanted a car and thought he would help without requiring sex.

Jeannie Curtis testified that she is a clinical psychologist in Rogers, Arkansas, and had counseled Angelique Powell in 2007. She explained that Ms. Powell was suffering symptoms of depression, flashbacks, nightmares, insomnia, and panic symptoms. Ms. Powell told Ms. Curtis that she had been raped in February of that year. Ms. Curtis advised Ms. Powell to continue therapy and to report the rape.

The circuit court denied appellant's motion for directed verdict, and the witnesses for the defense were called. Appellant's cousin, Donna Barnes, testified that she and appellant's mother went to see appellant on February 13, 2007, at his Springdale shop. She said that she went in and heard groaning and moaning, and heard a woman's voice. She recalled words "that was good" or "that feels good." She said she turned around and walked out and waited. She explained that she then saw Angelique Powell come out the door in

front of appellant. She said Ms. Powell was smiling and that she turned around and hugged and kissed appellant. At the close of testimony, the circuit court denied the renewed motion for directed verdict. The jury found appellant guilty of rape and sentenced him to thirty-five years' imprisonment in the Arkansas Department of Correction. The circuit court ruled that appellant should serve ten years of the fifteen-year sentence he received for his failure to appear consecutively with the rape sentence. The judgment and commitment order was filed on July 10, 2008. A timely notice of appeal was filed on August 6, 2008, and this appeal followed.

*Applicable Law and Standard of Review*

Arkansas Rule of Evidence 404(b) states

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admission or rejection of testimony is a matter within the circuit court's sound discretion and will not be reversed on appeal absent a manifest abuse of that discretion and a showing of prejudice to the defendant. *Phavixay v. State,* 373 Ark. 168, 282 S.W.3d 795 (2008). Our supreme court recently stated with respect to evidence allowed under Rule 404(b),

Rule 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is not admissible under Rule 404(b) if it is offered to show a defendant's bad character traits and to show that he acted in conformity with those traits in committing crimes presently charged. The evidence must be independently relevant, which means that it has the tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. *Williams v. State,* 343 Ark. 591, 36 S.W.3d 324 (2001). Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible under Rule 404(b). *Jackson v. State,* 359 Ark. 297, 197 S.W.3d 468 (2004). Like other evidentiary determinations, balancing of the probative value of evidence against prejudicial effect is a matter left to the trial judge's sound discretion. *Id.*

*Creed v. State,* 372 Ark. 221, 226–27, 273 S.W.3d 494, 499 (2008). Additionally, in *Morgan v. State,* 359 Ark. 168, 195 S.W.3d 889 (2004), our supreme court explained:

In *McCoy v. State,* 354 Ark. 322, 123 S.W.3d 901 (2003), this court stated that pursuant to Rule 404(b), evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This court held that if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Id.* The test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance. *Id.* In addition, to be probative under Ark. R. Evid. 403, the prior criminal act must be similar to the crime charged. *See Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995).

. . . .

■ In *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003), this court stated that when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *See also Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 [ (1997) ]; *cert. denied*, 522 U.S. 1002, 118 S.Ct. 572, 139 L.Ed.2d 412 (1997). Moreover, the State is entitled to produce evidence showing circumstances which explain the act, show a motive, or illustrate the accused's state of mind. *Id.*

. . . .

■ Under our case law, the previous acts do not have to be identical, just similar. *See Sasser*, 321 Ark. 438, 902 S.W.2d 773.

*Id.* at 178–80, 195 S.W.3d at 896.

### Discussion

■ Appellant argues that the State introduced the testimony of the two women regarding unwanted sexual contact for the sole purpose of proving that he was a bad person. He insists that the testimony of Ms. Hicks and Ms. Hobson shows dissimilar ways that they met him. Appellant argues, however, that when they said "stop," appellant did stop. He claims that he did not rape them or force himself on them. Appellant contends that, although the State argues that his actions were part of a plan to commit a crime, it is just as easily a way to meet women and entice them into a consensual sexual relationship. In effect, appellant urges that the alleged *modus operandi* is a way to engage in consensual sex, rather than rape, as alleged by the State. He argues that while there may be similarities in the contact he had with these women, they are not relevant to prove he possessed the same intent, motive, and plan to commit rape.

Appellant cites *Phavixay, supra*, where our supreme court ruled that evidence of a prior controlled-drug buy was inadmissible other-bad-acts evidence. There, the supreme court reasoned that it had allowed evidence of prior crimes to establish *modus operandi*, the general purpose of proving a method of operation is for purposes of identification. *See Diffee v. State*, 319 Ark. 669, 894 S.W.2d 564 (1995). The supreme court held that the record did not reflect where identity was an issue at trial. Furthermore, appellant submits that for the admission of *modus operandi* evidence, the methodology must be so unique that both acts can be attributed to one individual. *See Frensley v. State*, 291 Ark. 268, 724 S.W.2d 165 (1987). The supreme court also held that intent was not an issue, as it had been in other cases where evidence was allowed under the exception, and concluded that it could not perceive of any reason for the admission of Phavixay's prior drug transaction other than to show he was a drug dealer likely to have sold drugs again on the particular date for which he was tried. The supreme court explained that "this is precisely the type of evidence that Rule 404(b) was designed to exclude." *Phavixay*, 373 Ark. at 171, 282 S.W.3d at 798. Here, appellant argues that the acts presented are such as to merely prove he is a criminal, and that the testimony failed to show the acts were so unique as to be attributed to one individual.

Appellant's final argument is that the evidence of his guilt is not so overwhelming that this court can affirm his conviction regardless of the error. *See Marmolejo v. State*, 102 Ark. App. 264, 284 S.W.3d 78 (2008). He claims there was inconsistency in Ms. Powell's testimony over whether the door was locked and the number of telephone calls she received from appellant. Further, he claims that she gave testimony that she had never given before. He ar-

gues, therefore, that presentation of the other witnesses could have influenced the jury to believe that he intended to sexually attack the victim, and had the circuit court prevented this testimony, that would have aided the appellant in attacking the credibility of the victim.

We disagree and hold that the circuit court did not abuse its considerable discretion in admitting Ms. Hicks's and Ms. Hobson's testimony. The women's stories show appellant's intent to obtain sexual gratification and the scheme he used to accomplish that goal. In each case, appellant parlayed a chance encounter and quick conversation with a woman into an invitation for a private appointment or interview at one of his fitness studios. Appellant then used the inherently physical nature of his profession, and his victim's belief that she was engaged in a formal interview, to get very close, physically, to his victim. The evidence indicates that in each case, appellant escalated the physicality of the encounter by demonstrating exercises for the women and asking them to lie on the floor. And in each case, appellant sexually assaulted the woman once she was in a prone position.

We agree with the State's contention that this case is similar to *Fells v. State,* 362 Ark. 77, 207 S.W.3d 498 (2005), where our supreme court held that the victims' accounts were similar enough as to make the 404(b) witness testimony independently relevant to show intent, motive, or plan. *Id.* at 84–85, 207 S.W.3d at 503. In both cases, Fells visited low-income areas and targeted vulnerable women. He used his personal charm to engage his victims in small talk as a way of learning their vulnerabilities and then used those vulnerabilities to his advantage. He also showed a willingness to smear each victim's character when he was caught or rebuffed. In the instant case, the similarities of the victims' accounts show that the admission of Ms. Hicks's and Ms. Hobson's testimony was not arbitrary or groundless.

Further, the women's testimony was also relevant to rebut appellant's defensive theory of consent. Donna Barnes, appellant's cousin, testified that she entered the studio during Ms. Powell's appointment, overheard the two *in flagrante delicto,* and saw a smiling Ms. Powell kiss appellant good-bye as she left. Ms. Hicks and Ms. Hobson both testified regarding their nonconsensual encounters with appellant, which was independently relevant to rebut appellant's defense.

Appellant's "no means no" argument—basically that Ms. Hicks's and Ms. Hobson's situations were different from Ms. Powell's in that he halted his assaults on them when they objected and burst into tears, respectively—has minimal impact on his appeal. That argument was included in an amended motion in limine on July 2, 2008, which was ruled upon by the circuit court at the hearing held on July 7, 2008, prior to trial. Appellant's argument fails to negate the material similarities in the women's accounts: (1) an initial meeting; (2) a one-on-one interview or appointment at appellant's studio; (3) inappropriate physical contact at the interview; (4) nonconsensual sexual conduct. Further, the State correctly points out that the fact that appellant's previous sexual assaults did not culminate in rape is not dispositive. *See Fells,* 362 Ark. at 84–85, 207 S.W.3d at 503.

Because we hold that the circuit court committed no error in admitting the testimony, we need not address the "harmless error" argument. We do note that the circuit court issued an appropriate 404(b) limiting instruction, warning the jury that it was not to consider evidence of other crimes, wrongs, or acts of appellant as proof of his character, but could consider it only as evidence of motive, opportunity,

intent, preparation, or plan. As such, any potential prejudicial effect of Ms. Hicks's and Ms. Hobson's testimony was minimized by the limiting instruction. *See Smith v. State*, 90 Ark. App. 261, 205 S.W.3d 173 (2005).

Affirmed; motion to relieve counsel and proceed pro se denied.

ROBBINS and BAKER, JJ., agree.