Theodis KELLY *v.* STATE of Arkansas

CA CR 01-278                                                         91 S.W.3d 526

Court of Appeals of Arkansas
Division IV
Opinion delivered December 11, 2002

*Robert L. Herzfeld, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A jury in Phillips County Circuit Court found appellant, Theodis Kelly, guilty of first-degree murder. He was sentenced to fifty-five years' imprisonment in the Arkansas Department of Correction. He raises two arguments on appeal. First, he argues that the trial court erred in failing to order a psychiatric evaluation. Second, he argues that the trial court erred in failing to instruct the jury on the lesser-included offense of manslaughter. We agree that the trial court erred in failing to order a psychiatric evaluation and reverse and remand for a new trial.

On June 1, 1999, Shekeylia Miller received a gunshot wound to her chest. She was taken to the Helena Regional Medical Center. She was then transferred to a hospital in Memphis, where she later died from the wound.

Shekeylia's neighbor, Tamika Lockett, testified that as she was pulling into her driveway on June 1, 1999, she saw Shekeylia's three-year-old daughter standing in the doorway of the apartment

crying. When she ran over, the child was trembling and asked Tamika to "come help my momma." Tamika entered the apartment and found Shekeylia on the bedroom floor face down in a pool of blood. As Shekeylia sat up, Tamika could see the blood pouring out of her chest and a little out of her mouth. Tamika called 911. The child told Tamika that her mom and daddy (the child referred to appellant, Theodis Kelly, as "daddy") got into a fight, and he shot her and then pushed her off the bed. Tamika also testified as to her knowledge of past threats made toward Shekeylia by appellant.

Kimberly Tribblet testified that she had observed Shekeylia and her boyfriend (appellant) in a fight earlier in the day on June 1, 1999. Kimberly and her cousin, Sabrina Bates, had gone over to Shekeylia's apartment that day to use the telephone. While Kimberly was there, appellant threatened Shekeylia, telling her that her company needed to be gone when he got back. Appellant then went into the bedroom, and Kimberly and Sabrina left the apartment. Kimberly and Sabrina had reached the side of Sabrina's house when they heard a gunshot that came from Shekeylia's apartment. When they returned to the front of the house, they saw appellant running from the apartment with a long gun in his hand.

Officer Davis responded to the 911 call on June 1, and when he arrived at the apartment, he immediately saw Shekeylia's daughter. He described the child as being highly upset and in a "cry mode." When he first arrived, the child told him that "my daddy shot my mother." He heard voices coming from the bedroom, and he immediately went to investigate. He observed Shekeylia with blood all around her, screaming and crying. He began to assist Shekeylia by having a bystander apply pressure to stop the bleeding as he called for backup.

Appellant was arrested the day after the shooting. After he was advised of his *Miranda* rights, he asked to speak to Edna Porter, Shekeylia's mother. Officer McCarty stayed in the room while appellant spoke with Ms. Porter. Officer McCarty testified that when Ms. Porter entered the room, appellant immediately

said something to the effect that he shot Shekeylia and it was an accident and that he was sorry. Ms. Porter testified that the only thing appellant tried to say was that it was an accident.

On December 4, 2000, at 5:45 p.m., defense counsel met with appellant at the Phillips County Jail. During that meeting, appellant advised his attorney of his need for a mental evaluation. Around 6:00 p.m., when defense counsel was leaving the jail, he saw Mr. Murray, the prosecutor, across the parking lot. Defense counsel gave the prosecutor verbal notice that he was going to file a motion requesting a psychiatric evaluation. Defense counsel filed a motion requesting a psychiatric evaluation pursuant to Ark. Code Ann. § 5-2-305 (Supp. 2001) on the morning of December 5, 2000, prior to trial. At a hearing on the motion, appellant testified as to his prior treatment and receipt of benefits for his mental condition or defect. The trial court denied his motion.

After the close of evidence at the trial, defense counsel requested that the trial judge instruct the jury as to the lesser-included offense of manslaughter due to evidence presented at trial that the shooting was an accident. The trial judge did not instruct the jury as to manslaughter; rather he instructed the jury as to murder in the first degree and murder in the second degree. Ultimately, the jury convicted appellant of murder in the first degree.

For his first point on appeal, appellant argues that the trial court erred in failing to order a psychiatric evaluation. Appellant contends that the trial court should have immediately suspended the proceedings subsequent to his filing of the motion requesting a psychiatric examination. Appellant relies on the specific language in Ark. Code Ann. § 5-2-305(a) (Repl. 1997)[1], which states,

> Whenever a defendant charged in circuit court:
>
> (1) Files notice that he intends to rely upon the defense of mental disease or defect, or there is a reason to believe that mental disease

---

[1] The statute, which was in effect at the time of appellant's trial, was amended in 2001.

or defect of the defendant will or has become an issue in the cause; or

(2) Files notice that he will put in issue his fitness to proceed, or there is reason to doubt his fitness to proceed, the court, subject to the provisions of §§ 5-2-304 and 5-2-311, shall immediately suspend all further proceedings in the prosecution. If a trial jury has been impaneled, the court may retain the jury or declare a mistrial and discharge the jury. A discharge of the trial jury shall not be a bar to further prosecution.

In *Hudson v. State*, 303 Ark. 637, 799 S.W.2d 529 (1990), our supreme court affirmed the denial of appellant's motion for a psychiatric evaluation because appellant failed to file the notice contemplated by the statute. In a supplemental opinion on denial of rehearing, *Hudson v. State*, 303 Ark. 640-A, 801 S.W.2d 48 (1991), the supreme court conceded that its first opinion had "failed to address the substantive argument advanced by appellant" that, irrespective of such notice, a psychiatric examination may be warranted if there is reason to believe mental disease or defect will become an issue. *Hudson*, 303 Ark. at 640-B, 799 S.W.2d at 48. The court held that statements by defense counsel that appellant did not appreciate the seriousness of the charges against him were not sufficient to require the trial court to order a psychiatric evaluation. *Id.*

The instant case is distinguishable from *Hudson* in that appellant filed a motion requesting a psychiatric evaluation, and the trial court made the specific finding that "[defense counsel] timely made the notice to the State and the Court yesterday in terms of hearing and receiving notice. . . He's done that and the issue has been preserved." However, upon finding that the issue had been preserved, rather than suspending the proceedings and giving appellant the opportunity for a psychiatric evaluation, the trial judge proceeded with a hearing. In doing so, the trial judge relied on *Gruzen v. State*, 267 Ark. 380, 591 S.W.2d 342 (Ark. App. 1979).

Pursuant to Ark. Stat. Ann. § 41-606 (Repl. 1977), now codified at Ark. Code Ann. § 5-2-309, the court in *Gruzen*

held that when fitness to proceed with the trial becomes an issue, it is the duty of the court to make a determination of that issue, either on the report of the Arkansas State Hospital or after a hearing on that issue. However, in *Gruzen*, the appellant had pled not guilty and not guilty by reason of insanity, and as a result he was committed to the Arkansas State Hospital for mental examination upon motion by the prosecuting attorney. *Id.* at 384-85, 591 S.W.2d at 344-45. At the hospital, he was diagnosed with schizophrenia, paranoid type, and "with psychosis." *Id.* at 385, 591 S.W.2d at 345. A two-week extension was given to the normal thirty-day observation period, and then an additional 120 days of observation was granted by the trial judge. *Id.*

Arkansas Code Annotated section 5-2-309 states:

(a) If the defendant's fitness to proceed becomes an issue, it shall be determined by the court.

(b) If neither party contests the finding of the report filed pursuant to § 5-2-305, the court may make a determination on the basis of the report.

Arkansas Code Annotated section 5-2-309 specifically makes reference to section 5-2-305, and under section 5-2-305, the trial judge is required to immediately suspend all proceedings upon the filing of appellant's motion requesting a psychiatric evaluation. The trial judge failed to suspend any of the proceedings in this case in order to conduct a mental evaluation on appellant and proceeded with a hearing on appellant's competency before any evaluation was made. A hearing, such as the one the trial judge conducted, is to resolve any contest made regarding the mental-evaluation report made by section 5-2-305. In this case, appellant was not given the initial opportunity for an evaluation or to present a report. Thus, the trial judge clearly erred in not immediately suspending the proceedings to allow for a psychiatric evaluation of appellant.

■ We discuss appellant's second point of appeal for the guidance of the trial court and counsel on remand, as the issue may arise on retrial. *See Bunn v. State*, 320 Ark. 516, 898 S.W.2d

450 (1995) (citing *Diffee v. State*, 319 Ark. 669, 894 S.W.2d 564 (1995); *Spring Creek v. Sarrett*, 319 Ark. 259, 890 S.W.2d 598 (1995)). For his second point, appellant argues that the trial court erred in failing to give the jury instruction on the lesser-included offense of manslaughter. He asserts that there was evidence that the shooting was an accident, creating a rational basis for the manslaughter instruction. Appellant cites *Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001) in support of his proposition that refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. While we agree that the evidence in this case created a rational basis for the manslaughter instruction, the trial court's error in failing to give the instruction was cured when the jury convicted appellant of murder in the first degree. When a lesser-included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser-included offense is cured. *See Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996), *overruled on other grounds by Mackintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998) (quoting *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989); *Harris v. State*, 291 Ark. 504, 726 S.W.2d 267 (1987)). This is commonly referred to as the skip rule. *Id.* (quoting *Easter v. State*, 306 Ark. 615, 816 S.W.2d 602 (1991)). However, should this issue arise on remand, the jury should be instructed as to all lesser-included offenses which are supported by the evidence. *See Ellis, supra.*

We reverse and remand for a new trial due to the trial judge's error in failing to suspend all proceedings and order a psychiatric evaluation.

ROBBINS and VAUGHT, JJ., agree.