

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-14-154

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** November 5, 2014 |
| HERBERT BENNETT | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CR-11-701-1] |
| V. |  |  |
|  |  | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Herbert Bennett was charged with the first-degree murder of Justin Burkes and first-degree battery committed against Lucas Horsley. After a jury trial, Mr. Bennett was convicted of the lesser-included offenses of second-degree murder and second-degree battery, and he was sentenced to nineteen years in prison.

On appeal, Mr. Bennett argues that the trial court erred in denying his motion for directed verdict on the homicide charge based on his defense of justification. Mr. Bennett also contends that the trial court erred in failing to give his proffered jury instructions on negligent homicide and third-degree battery. We affirm.

On the afternoon of October 22, 2011, Cornelius Bloodsaw was hosting a child's birthday party at his house. Several people were in attendance, including Cornelius's now-



wife Beth, Beth's daughter Karen Burkes, and Karen's husband Justin Burkes. The party was for Karen's ten-year-old son.

Herbert Bennett knew all of these people and had been to the Bloodsaw residence many times previously. However, according to Beth Bloodsaw, she had on numerous occasions admonished Mr. Bennett to stay away from her and her family.

Mr. Bennett showed up at the birthday party and went to the back deck where people were gathered. Beth immediately told Mr. Bennett to leave, and Mr. Bennett bumped into her. Justin Burkes then advised Mr. Bennett to leave, and Mr. Bennett asked to talk with Justin. Mr. Bennett and Justin walked down the driveway toward Mr. Bennett's car and engaged in conversation.

Mr. Bennett and Justin got into an argument that quickly became a physical altercation. During the fight, Mr. Bennett's nose and lip were bloodied and his shirt was torn. Lucas Horsley arrived during the fight and tried to stop it, pulling Justin away from Mr. Bennett.

Justin's wife Karen testified that during the fight both Mr. Bennett and Justin were throwing punches, and it appeared that Mr. Bennett was winning the fight despite the fact that Mr. Bennett sustained a bloody nose and lip. Karen said that Mr. Bennett had Justin backed up against a fence. Karen grabbed a small serrated steak knife and attempted to stab Mr. Bennett, but she was unsuccessful and dropped the knife to the ground and backed away. After the fight broke up, Mr. Bennett returned to his car.

Cornelius Bloodsaw testified that Mr. Bennett was in his car for two or three minutes and that he handed Mr. Bennett his hat and other items that had fallen to the ground during the fight. According to Beth Bloodsaw, she told Justin to give Mr. Bennett his cell phone so he would leave, and Justin flipped him his phone. According to Karen, Justin was standing outside the car and told Mr. Bennett to leave before there was another fight.

At that time Mr. Bennett reached under the driver's seat and grabbed a handgun. Mr. Bennett chambered a round and fatally shot Justin in the chest. There was some discrepancy in the testimony as to whether Mr. Bennett had fired one or two rounds, but a bullet struck Lucas Horsley in the neck. An ambulance arrived and medical personnel were able to save Lucas's life. Cornelius Bloodsaw testified that Lucas spent a matter of days in the hospital before being released, but Karen Burkes stated that she thought it was more like four weeks.

After the incident Mr. Bennett fled the scene and abandoned his car in some woods, and later that night the police found him and arrested him. Mr. Bennett gave a statement to the police, stating that he had shot Justin in self defense and that the bullet had gone through Justin and struck Lucas. Mr. Bennett told the police that he did not mean to shoot Lucas, and he said that after he left the scene he tossed the gun outside somewhere.

Dr. Daniel Dye performed an autopsy on Justin Burkes. Because there was no soot or stippling on the body, Dr. Dye concluded that the bullet that struck Justin's chest was fired from more than three feet away. The bullet exited through Justin's back, and Dr. Dye indicated that the exit wound was "shored." Dr. Dye explained that another person could

3

have easily been struck by the bullet, and that the shored nature of the wound indicated that someone may have been behind Justin holding onto him.

Mr. Bennett testified on his own behalf, and he stated that Justin Burkes was in a rage that day and repeatedly attacked him. He said that he was in fear for his life and shot Justin in self defense after Justin came at him aggressively for the third time. The State's witnesses contradicted appellant's account, stating that the altercation had ended in the driveway several minutes before Mr. Bennett fired the gun from his car. Moreover, Mr. Bennett himself testified that he never saw Justin with a weapon and that after the initial round of fighting he had time to drive away from the situation.

Mr. Bennett's first argument on appeal is that the trial court erred in failing to grant his motion for directed verdict on the homicide charge based on his justification defense. A motion for directed verdict is a challenge to the sufficiency of the evidence, and the test on appeal is whether there was substantial evidence to support the verdict. *Fowler v. State*, 2014 Ark. App. 460, ___ S.W.3d ___. Mr. Bennett contends that his second-degree murder conviction should be reversed because he acted in self defense and that the State's evidence was insufficient to negate his defense of justification.

We do not address Mr. Bennett's challenge to the sufficiency of the evidence because it is not preserved for review. Mr. Bennett was charged with first-degree murder, but he was convicted of the lesser-included offense of second-degree murder.[1] When Mr. Bennett made

---

[1] Mr. Bennett was convicted under Arkansas Code Annotated section 5-10-103(a)(2) (Repl. 2013), which provides that a person commits second-degree murder if, "[w]ith the purpose of causing serious physical injury to another person, the person causes

4

his motions for directed verdict at the close of the State's case and at the close of the evidence, he only referenced first-degree murder and did not mention second-degree murder either by name or elements. Our supreme court has long held that a defendant making motions for directed verdict must anticipate an instruction on any lesser-included offenses and must specifically address the elements of the lesser-included offense on which he wishes to challenge the State's proof. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

In *Mainard v. State*, 102 Ark. App. 210, 283 S.W.3d 627 (2008), we held that the appellant had not preserved his argument that the State had failed to present sufficient evidence of second-degree murder because the State had not negated appellant's defense that he was justified in defending himself. We explained that, because appellant's directed-verdict motion was based exclusively on first-degree murder, any argument as to the sufficiency of the evidence on the lesser-included offense had been waived:

> [I]n order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the trial court of the elements of the lesser-included offenses questioned by their motions for directed verdict. Appellant's directed verdict motion did not include the lesser-included offense of second-degree murder, either in name or in elements; accordingly, we find that appellant's argument is not preserved for appellate review.

*Mainard*, 102 Ark. App. at 214, 283 S.W.3d at 630 (citation omitted).

Like the appellant in *Mainard*, Mr. Bennett never mentioned second-degree murder or any of its elements when seeking a directed verdict. Therefore, he waived his sufficiency

---

the death of any person."

5

challenge on this lesser-included offense. *See also Rasul v. State*, 2009 Ark. App. 631; *Carter v. State*, 2009 Ark. App. 204.

Mr. Bennett next argues that the trial court erred in not giving his proffered jury instruction on the lesser-included offense of negligent homicide. Pursuant to Arkansas Code Annotated section 5-10-105(b)(1) (Repl. 2013), a person commits negligent homicide if he negligently causes the death of another person. Arkansas Code Annotated section 5-2-202(4) (Repl. 2013) defines "negligently":

(A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.
(B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

An instruction on a lesser-included offense is appropriate when it is supported by even the slightest evidence. *Cole v. State*, 2013 Ark. App. 492. Once an offense is determined to be a lesser-included offense, the trial court is obligated to instruct the jury on that offense only if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. *Id.* A trial court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Id.*

Applying these standards, we hold that the trial court did not abuse its discretion in refusing to instruct the jury on negligent homicide. Mr. Bennett relies on *Worring v. State*, 2 Ark. App. 27, 616 S.W.3d 23 (1981), but in that case we held that the trial court erred in failing to give a negligent-homicide instruction where the appellant testified that she had not

6

intentionally fired the weapon that killed the victim. By contrast, in the present case Mr. Bennett testified that he reached under his car seat, chambered a round, and intentionally fired the weapon directly at the victim's chest. That being so, there was no rational basis to conclude that Mr. Bennett's actions were merely negligent.

Mr. Bennett suggests that the jury might have found that he was negligent in forming his reason to act with deadly physical force, but this argument also fails. Deadly physical force is justified as self defense if the defendant *reasonably* feared he was in danger of losing his life or receiving great bodily injury. *Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992) (emphasis added). However, there is no justification for using deadly physical force if the defendant *negligently* feared he was in such danger. The elements of negligent homicide require that the jury find that the defendant negligently caused the death of another person, and given Mr. Bennett's admission that he intentionally fired at the victim this instruction was properly denied.

Furthermore, we have held that when a lesser-included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Kelly v. State*, 80 Ark. App. 126, 91 S.W.3d 526 (2002). This is commonly referred to as the skip rule. *Id.* In this case the jury was instructed on first-degree murder, second-degree murder, and manslaughter. Because the jury convicted Mr. Bennett of second-degree murder and had been instructed on the lesser-included offense of manslaughter, any possible error in failing to give an instruction on the even lesser lesser-included offense of negligent homicide was cured.

7

Mr. Bennett's remaining argument is that the trial court abused its discretion in failing to give his proffered jury instruction on third-degree battery. The jury was instructed on first-degree battery and second-degree battery, and the jury convicted appellant of second-degree battery committed against Lucas Horsley. Pursuant to Arkansas Code Annotated section 5-13-202(a)(3)(A) (Repl. 2013), a person commits second-degree battery if he recklessly causes serious physical injury to another person. Appellant's proffered instruction on third-degree battery was consistent with Arkansas Code Annotated section 5-13-203 (Repl. 2013), which provides that a person commits third-degree battery if: (1) with the purpose of causing physical injury to another person, the person causes physical injury to any person, (2) the person recklessly causes physical injury to another person, or (3) the person negligently causes physical injury to another person by means of a deadly weapon.

The thrust of Mr. Bennett's argument focuses on the difference between causing a "serious physical injury" as required for second-degree battery and only causing a "physical injury" as required for third-degree battery. Mr. Bennett argues there was an absence of proof that Lucas suffered a "serious physical injury," and that there was a rational basis from which the jury could conclude that he suffered only a "physical injury." Mr. Bennett asserts that the evidence relating to Lucas's injury came from lay witnesses, and that there was no testimony from medical personnel or Lucas himself to show that his injury was serious. We disagree with appellant's argument.

"Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted

impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(25) (Repl. 2013). "Physical injury" means the impairment of physical condition, infliction of substantial pain, or infliction of bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102(14) (Repl. 2013).

The testimony relating to Lucas's injury showed that Lucas suffered a gunshot wound to the neck and was bleeding from each side of his neck. Beth Bloodsaw testified that Lucas fell to the ground and was turning purple. Officer Patrick Langley responded to the shooting and testified that Lucas had a wound to the front of his throat and was gurgling and coughing up blood. Officer Langley described it as a fairly severe wound, stated that there was a substantial amount of bleeding, and said that he was concerned that Lucas would die before the ambulance arrived. The injury resulted in a hospital stay of at least several days. Based on the evidence presented, we conclude that the only rational conclusion was that Lucas Horsley sustained a serious physical injury as opposed to just a physical injury. Because there was no rational basis to acquit Mr. Bennett of second-degree battery and convict him of third-degree battery, we hold that there was no abuse of discretion in denying a third-degree battery instruction.

Affirmed.

GRUBER and BROWN, JJ., agree.

*Phillip A. McGough, P.A.*, by: *Phillp A. McGough*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.